Vineet Bhatia, Esq.
David Peterson, Esq.
SUSMAN GODFREY L.L.P.
1000 Louisiana St. 5100
Houston, Texas 77002
Telephone: 713-653-7855
Facsimile: 713-654-3344

Proposed Attorneys for Lyondell Chemical Company, et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

| | |
|---|---|
| In re: : | |
| : | **Chapter 11** |
| **LYONDELL CHEMICAL COMPANY, et al.,** : | **Case No. 09-10023 (REG)** |
| : | **Jointly Administered** |
| Debtors. : | |

----------------------------------------------------------------x

| | |
|---|---|
| **LYONDELL CHEMICAL COMPANY, et al.,** : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | Adv. Proc. No. 09-01038 (REG) |
| : | |
| **CENTERPOINT ENERGY GAS SERVICES** : | |
| **INC., et al.,** : | |
| : | |
| Defendants. : | |

----------------------------------------------------------------x

**DEBTORS' OMNIBUS RESPONSE TO OBJECTIONS REGARDING DEBTORS' MOTIONS FOR (I) A PRELIMINARY INJUNCTION PURSUANT TO 11 U.S.C. § 105, RULE 65 OF THE FEDERAL RULES OF CIVIL PROCEDURE, AND RULES 7001(7) AND 7065 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND/OR (II) EXTENDING THE AUTOMATIC STAY PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE**

Lyondell Chemical Company and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), hereby submit this omnibus response (the "Response") to the objections to the Debtors' *Motion for (I) a Preliminary Injunction and a Temporary Restraining Order Pursuant to 11 U.S.C. § 105, Rule*

*65 of the Federal Rules of Civil Procedure, and Rules 7001(7) and 7065 of the Federal Rules of Bankruptcy Procedure, and/or (II) Extending the Automatic Stay Pursuant to Section 362 of the Bankruptcy Code*, dated February 6, 2009 (the "<u>Initial Motion</u>") [Docket No. 3] and *Supplemental Motion for (I) a Preliminary Injunction Pursuant to 11 U.S.C. § 105, Rule 65 of the Federal Rules of Civil Procedure, and Rules 7001(7) and 7065 of the Federal Rules of Bankruptcy Procedure, and/or (II) Extending the Automatic Stay Pursuant to Section 362 of the Bankruptcy Code*, dated February 9, 2009 (the "<u>Supplemental Motion</u>" [Docket No. 8] and, together with the Initial Motion, the "<u>Motions</u>"), and respectfully represent as follows:

**Response**

1. The Debtors' Motions seek a preliminary injunction pursuant to section 105 of the Bankruptcy Code,[1] and/or extension of the automatic stay pursuant to section 362 of the Bankruptcy Code, to enjoin the Guaranty Claimants and the 2015 Noteholders from attempting to exercise remedies against LBIAF and the other Non-Debtor Affiliates. Approximately 19 objections (the "<u>Objections</u>") to the relief requested in the Motions were filed by the Guaranty Claimants and 2015 Noteholders (collectively, the "<u>Objectors</u>"). For all of the reasons described below, all of the Objections lack merit and should be overruled.

2. Attached hereto as Exhibit A is a summary of the principle objections made by the Objectors and the Debtors' responses thereto.

3. The Debtors concede that the facts of this case are not typical facts commonly seen in the caselaw discussing whether a bankruptcy court should issue a section 105 injunction. Indeed, the facts here are far more compelling than in the "traditional" injunction

---

[1] All capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Motions.

cases. Put simply: due to the complex interrelation of LBIAF, the Debtors and the Non-Debtor Affiliates, it is highly likely that, absent the relief requested in the Motions, the Debtors will suffer dire, irreparable consequences which have the potential to derail their reorganization efforts, thereby causing the loss of billions of dollars and thousands of jobs, while the harm that would be suffered by the Objectors is minimal.

4. Specifically, and as more thoroughly addressed in the Debtors' prior submissions, the exercise of remedies by the 2015 Noteholders or the Guaranty Claimants against LBIAF or other Non-Debtors Affiliates could cause an insolvency proceeding against LBIAF, which would trigger immediate, direct harm against the Debtors by causing a default in the DIP Financing and attendant loss of liquidity as a result of such default. Further, an insolvency proceeding by or against LBIAF could trigger the loss of control of the Debtors to a foreign liquidator and a cascade of liquidation filings by the Non-Debtor Affiliates in Europe, resulting in the loss of billions of dollars of value to the Debtors' integrated global enterprise. Allowing the exercise of remedies against LBIAF jeopardizes the Debtors' reorganization.

5. While the requested injunction may cause the Objectors to lose certain bargained-for rights, in reality such rights provide very little value to the Guaranty Claimants or the 2015 Noteholders in the absence of the relief requested. Under the circumstances, the loss of the ability to proceed against LBIAF and the Non-Debtor Affiliates causes little or no economic harm to the 2015 Noteholders or the Guaranty Claimants.

6. The 2015 Noteholders would gain very little from pursuing claims against LBIAF or other Non-Debtor Affiliates. Under the terms of the 2015 Indenture and pursuant to an intercreditor agreement to which the 2015 Noteholders are parties, the claims of the 2015 Noteholders are expressly subordinated to the Debtors' approximately $20 billion of senior

secured debt. Upon notification of a default under the 2015 Notes, the 2015 Noteholders and the indenture trustee may only take enforcement action against the 2015 Guarantors or any collateral supporting their claims after the passage of 179 days or the occurrence of certain events. Moreover, any payments actually received by the 2015 Noteholders are subject to turnover for the benefit of the prepetition senior secured lenders. Because LBIAF has no meaningful assets other than its equity interests in the Debtors and Non-Debtor Affiliates (and intercompany claims), the 2015 Noteholders will only recover after all of the creditors of LBIAF's subsidiaries are satisfied. Accordingly, accelerating maturity and filing an involuntary insolvency proceeding will not likely afford the 2015 Noteholders any meaningful recovery (other than triggering credit default swaps that certain 2015 Noteholders hold with respect to the 2015 Notes).

7. Similarly, the Guaranty Claims are structurally subordinated to the Company's $20 billion of senior secured debt guaranteed on a secured basis by LBIAF and substantially all of its Debtor and Non-Debtor Affiliates. Such senior claims would have to be satisfied in full before LBIAF could pay any unsecured claims or before any equity value could flow up to LBIAF to enable LBIAF to pay claims of its unsecured creditors. Thus, it is extremely unlikely that the Guaranty Claimants would ever realize value solely on account of the Guaranty Claims.

8. These facts – which demonstrate the irreparable harm to the Debtors in contrast to the minimal harm to the claimants – taken alone warrant the Court's use of its equitable power under section 105 of the Bankruptcy Code to impose the preliminary injunction requested by the Debtors. *See, e.g., Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and

justice in the reorganization process. . . . We have repeatedly emphasized the importance of the bankruptcy court's equitable power"); *Queenie, Ltd. V. Nygard Int'l*, 321 F.3d 282, 287-88 (2d Cir. 2003) (the automatic stay can apply to non-debtors when a claim against the non-debtor will have an immediate adverse economic consequence for the debtors); *In re Johns-Manville Corp.*, 68 B.R. 618, 625 (Bankr. S.D.N.Y. 1986), *aff'd in part and rev'd in part,* 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) ("A bankruptcy court sits as a court of equity. And as such this Court may issue injunctions when necessary to effectuate reorganization. This equitable power has been codified in [section] 105 of the Code and allows a bankruptcy court to enjoin proceedings in other courts to ensure the efficient administration of an estate"); *Sears, Roebuck & Co. v. Spivey*, 265 B.R. 357, 371–72 (E.D.N.Y. 2001) ("Section 105 of the Bankruptcy Code bestows on bankruptcy courts a specific equitable power to act in accordance with principles of justice and fairness. Bankruptcy courts have broad latitude in exercising this power."); *In re Duratech Industries, Inc.*, 241 B.R. 283, 288 (E.D.N.Y. 1999) ("Specifically, the Second Circuit has stressed that a bankruptcy court 'may sift through the circumstances surrounding any claim in order to ascertain that injustice or unfairness is not accomplished in the administration of the debtor's estate, and in so doing it may adopt that remedy which it deems most appropriate under the circumstances'"). *See also Kitchen v. Landy*, 382 U.S. 323, 336-37 (1966); *Pepper v. Litton*, 308 U.S. 295, 304 (1939).

## Conclusion

9. For the reasons set forth in the entirety of the Debtors' submissions in support of the Motions, it is clear that allowing the 2015 Noteholders or the Guaranty Claimants to take any act to accelerate the maturity of or otherwise enforce any rights in respect of the 2015 Notes or the Guaranty Claims against LBIAF or the Non-Debtor Affiliates could imperil the

Debtors' chances of successfully reorganizing and thus irreparably harm the Debtors at this very early stage in these chapter 11 cases. Accordingly, as a necessary measure that would serve the best interests of the Debtors' estates and creditors, the Court should enjoin the exercise of contractual or legal remedies against LBIAF and other Non-Debtor Affiliates with respect to the 2015 Notes and the Guaranty Claims until confirmation of a plan of reorganization in these cases.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) overruling the Objections, (ii) granting the relief requested in the Motions, and (iii) granting such other and further relief as is just.

Dated:  New York, New York
        February 13, 2009

> SUSMAN GODFREY L.L.P.
>
> *Vineet Bhatia*
> Vineet Bhatia, Esq.
> David Peterson, Esq.
> 1000 Louisiana St. 5100
> Houston, Texas 77002
> Telephone: 713-653-7855
> Facsimile: 713-654-3344
> vbhatia@susmangodfrey.com
> dpeterson@susmangodfrey.com
>
> Proposed Attorneys for
> Lyondell Chemical Company, et al.

**SUMMARY OF OBJECTIONS TO PRELIMINARY INJUNCTION AND DEBTORS' RESPONSES THERETO**

| Argument No. | Summary | Response |
|---|---|---|
| **1.** | **Jurisdiction Issues.** | |
| | The Bankruptcy Court lacks *in personam* jurisdiction over certain foreign 2015 Noteholders. | • The Court has *in rem* jurisdiction over all estate assets, wherever located, and is empowered to provide whatever relief is necessary in aid of such jurisdiction. Hong Kong & Shanghai Banking Corp. v. Simon (In re Simon), 153 F.3d 991, 996 (9th Cir. 1998) ("Given this clear expression of intent by Congress in the express language of the Bankruptcy Code, we conclude that Congress intended extraterritorial application of the Bankruptcy Code as it applies to property of the estate."). <br><br>• Pursuant to section 39.1 of the intercreditor agreement to which the 2015 Noteholders are parties, each party thereto explicitly agreed to be subject to the jurisdiction of the federal courts in the Southern District of New York. *See In re Simon*, 153 F.3d 991 (9th Cir. 1998) (foreign creditor can subject itself to the jurisdiction of a bankruptcy court). |
| | Because the requested injunction involves non-debtors, Bankruptcy Court does not have core jurisdiction. | • The Debtors seek relief under section 105(a) to preserve assets of the Debtors' estates, which is a matter over which the Court has core jurisdiction. *See* 28 U.S.C. § 157(b)(2)(A) (core proceedings a bankruptcy court may here include "matters concerning the administration of the estate"); *Manville Corp. v. The Equity Security Holders Comm. (In re Johns-Manville Corp.)*, 801 F.2d 60, 64 (2d Cir. 1986) ("And in our view, if the bankruptcy court may ever use its equitable powers under section 105(a) to enjoin actions pursued in other courts as 'concerning administration of the estate' under section 157(b)(2)(A), it may exercise that power where there is a basis for concluding that rehabilitation, the very purpose for bankruptcy proceedings, might be undone by other action"); *In re Apollo Molded Products, Inc.*, 83 B.R. 189, 191 (Bankr. D. Mass. 1988) (adversary proceeding commenced by debtor to enjoin creditors from proceeding against debtor's principal was intended to protect the reorganization process and therefore a core proceeding under 28 U.S.C. section 157(b)(2)(A)). |

| Argument No. | Summary | Response |
|---|---|---|
| | Because the Bankruptcy Court lacks jurisdiction over foreign creditors and 2015 Noteholders, imposing an injunction would disadvantage U.S. creditors or 2015 Noteholders who are subject to the Bankruptcy Court's jurisdiction. | • The Bankruptcy Court's *in rem* jurisdiction over the Debtors' assets and powers under section 105 of the Bankruptcy Code are worldwide. The Guaranty Claimants by definition are largely is not entirely US creditors of the US Debtors over whom the Court has jurisdiction. The 2015 Noteholders have submitted to the jurisdiction in the US and in particular before the federal and courts in the Southern District of New York. Accordingly, the injunction would enjoin all of them equally.<br><br>• The Non-Debtor Affiliates are paying their creditors. Accordingly, no creditor of the Non-Debtor Affiliates would have to resort to a guaranty claim against LBIAF.<br><br>• In any event, given the lack of liquid assets with which to satisfy unsecured claims at LBIAF, creditors subject to the jurisdiction of the Bankruptcy Court stand to lose little. |
| | The Bankruptcy Court lacks jurisdiction over the 2015 Notes because the 2015 Noteholders do not have any claims against the Debtors arising from the 2015 Notes. | • Approximately 40 of the Debtors are guarantors of the 2015 Notes. |
| 2. | **International issues**. | |
| | Imposition of the injunction would be contrary to comity and an extraterritorial application of US law in that there is no center of main interest in the United States. | • The injunctive relief is in aid of the Debtors' reorganization in these chapter 11 cases.<br><br>• The Debtors seek injunctive relief to preserve the value of the US estates in aid of existing *in rem* jurisdiction over estate assets, wherever located, which will subject all parties with a nexus to the bankruptcy *res* to the Court's jurisdiction. The Court also has *in personam* jurisdiction for the reasons stated.<br><br>• The 2015 Notes were issued as a US private placement under Rule 144a of the Federal Securities Act of 1933. No foreign proceeding over the Guaranty Claimants and 2015 Noteholders has been commenced. New York law governs the 2015 Indenture and the intercreditor agreement and those 2015 Noteholders have submitted to jurisdiction in the |

| Argument No. | Summary | Response |
|---|---|---|
| | | United States federal courts for the Southern District of New York. |
| | | • The 2015 Notes are primary obligations of certain of the Debtors who are guarantors thereof. |
| 3. | **Preliminary Injunction Factors.** | |
| | The Debtors fail to demonstrate a likelihood of a successful reorganization. | • The Debtors have amply demonstrated a likelihood of a successful reorganization. |
| | | • The Debtors' success in obtaining substantial interim DIP Financing (especially in the current credit environment), which financing is scheduled for approval on a final basis shortly, as well as the progress of the cases to date, demonstrate for this early stage of the cases a reasonably likelihood of a successful reorganization. |
| | | • The Debtors' are well underway in stabilizing and restructuring their businesses in the very early stages of the chapter 11 cases. *See Dore & Assocs. Contracting, Inc. v. American Druggists' Ins. Co.*, 54 B.R. 353, 359 (Bankr. W.D. Wis. 1985) (bankruptcy court has broader latitude in determining whether to grant injunctive relief in the early stages of the case when it is uncertain if reorganization is feasible). |
| | | • Contrary to certain Objectors' assertions, the likelihood of success does not require assurance of 100% recovery to all creditors. |
| | The Debtors have failed to show irreparable harm:<br>* The Debtors fail to show how management will be distracted<br>* Irreparable harm cannot be premised upon DIP default of Debtors' own making | • The Debtors have amply demonstrated that the exercise of remedies by any of the Guaranty Claimants or the 2015 Noteholders remedies against LBIAF or the Non-Debtors Affiliates, if not enjoined, could have disastrous effects on the Debtors. |
| | | • The argument that a DIP default is of the "Debtors' own making" is far from reality. The Debtors' DIP lenders have required that an involuntary filing against LBIAF be a default under the DIP Financing. |
| | | • As demonstrated by the attachment order issued by a Dutch court, parties have taken steps toward exercising remedies with respect to LBIAF. Such actions threaten actual and imminent |

| Argument No. | Summary | Response |
|---|---|---|
| | | harm to the Debtors and are not mere conjecture. |
| | | • The Debtors' management substantially overlaps with that of LBIAF. The exercise of remedies against LBIAF, particularly an insolvency proceeding, would necessarily distract LBIAF's (and the Debtors') management. |
| | The balance of hardships weighs against the Debtors because the Objectors face the risk of the dissipation of value at LBIAF and the loss of the benefit of their bargained-for rights. | • The Debtors would suffer great hardship in the absence of the requested relief because, among other things, (i) the DIP Financing could default, leaving the Debtors and the Non-Debtor Affiliates with no liquidity, (ii) the existing forbearance agreements with the Debtors' prepetition senior lenders would be in default and potentially terminate, and (iii) there could be a cascade of filings by the Non-Debtor Affiliates, thereby causing the enterprise to lose significant value.<br><br>• The Guaranty Claimants and 2015 Noteholders, on the other hand, would suffer little economic harm.<br><br>• At the present time, the Non-Debtor Affiliates are only cash flow solvent because of the funding afforded them under the DIP Facility.<br><br>• The 2015 Noteholders were well aware of the risks attendant to the notes – the offering memorandum explicitly stated that LBIAF is a holding company with no revenue generating operations of its own and that LBIAF's senior debt would have the right to prevent LBIAF from making debt service payments on the 2015 Notes and that if the debt under the senior facilities was accelerated, LBIAF's assets may be insufficient to repay in full the 2015 Notes. |
| | Public interest mandates against an injunction because the creditors would suffer all of the detriment of the automatic stay without enjoying any of the protections. | • There are sufficient mechanisms in place under the DIP Financing and the prepetition credit facilities to ensure that LBIAF does not dissipate assets.<br><br>• The interests of the Debtors' creditors, employees, vendors and stakeholders would be negatively impacted if the Debtors' reorganization were not successful. |

| | | |
|---|---|---|
| **4.** | **Due Process/Notice Issues.** | |
| | Imposing an injunction would violate due process because insufficient notice was provided to the 2015 Noteholders. | • The Debtors provided ample notice of the preliminary injunction hearing to all parties in interest. As set forth in the Affidavit of Service of Daniel McElhinney, the Executive Director of Epiq Bankruptcy Solutions, LLC ("Epiq"), the Debtors' noticing agent, notice of the TRO and the preliminary injunction hearing was provided to the 2015 Noteholders in accordance with the 2015 Indenture and due process. Specifically:<br><br>• The Debtors served the TRO, the notices of hearing and all related documents on all parties in interest, including the indenture trustee, by facsimile or e-mail, where possible, and by overnight mail.<br><br>• On February 8, 2009, Epiq posted the initial pleadings to its public website and distributed the notice of hearing to the 2015 Noteholders through the Depository Trust and Clearing Corporation, Euroclear and Clearstream, each of which maintain electronic noticing systems through which notices are disseminated to holders of notes held or traded though such organizations.<br><br>• On February 9, 2009, the Debtors caused the Supplemental Motion, the notice of hearing on the Supplemental Motion, the Complaint and the summons related thereto to be served on all Guaranty Claimants, the indenture trustee, known 2015 Noteholders and all other parties in interest by facsimile or e-mail, where possible, and by overnight mail. Epiq also distributed the notice of hearing on the Supplemental Motion to the Settlement Organizations for distribution to 2015 Noteholders and to known banks and brokers that hold the 2015 Notes.<br><br>• On February 10, 2009, the notice of hearing of the motions was published in the Financial Times.<br><br>• In addition, there has been substantial press regarding the efforts of the 2015 Noteholders to organize and object to the Motions. All of the above, coupled with the fact that several 2015 Noteholders and the indenture trustee have filed timely objections, amply demonstrates that sufficient notice of the preliminary injunction hearing was provided to |

|   |   |   |
|---|---|---|
|   |   | the 2015 Noteholders. |
| 5. | The scope of the injunction should be narrowly tailored and the duration should be limited. | • The scope of the injunction is necessary to prevent the harm to the Debtors' estates.<br><br>• The injunction is limited to the confirmation date of a plan of reorganization in these cases. If the duration was short, the Debtors would suffer the same risk to their reorganization as they suffer now and the parties would be before the Court again. Moreover, the proposed injunction allows parties to seek relief from the injunction on appropriate notice and motion. |

# INDEX OF ARGUMENTS FOR OBJECTING PARTIES

| Objecting Party | Argument Nos. |
| --- | --- |
| Anadarko Energy Servs. Co., Houston Pipe Line Co. LP | Reserves rights only; injunctive relief not ripe as to their claims. |
| Aspen Technology, Inc. | Seeks limitations on injunction. |
| CenterPoint Energy Servs., Inc. and Cokinos Natural Gas Co. | 3 |
| CITGO Petroleum Corp. | 3 |
| Columbus Hill Overseas, Ltd. and Columbus Hill Partners L.P. | 1, 2, 3 |
| ConocoPhillips Co. | 1, 3 |
| Deutsche Bank AG, London Branch and Deutsche Asset Mgmt. | 1, 2, 3 |
| Dow Chemical Co. | 3 |
| GATX Corp. | 1, 3 |
| Hess Corp., Hess Energy Servs. Co. LLC and Hess Energy Trading Co. LLC | Seeks limitations on injunction. |
| Koch Supply & Trading, LP, Koch Supply & Trading, S.a.r.l. | 1, 3 |
| Liverpool L.P. and Elliott Int'l, L.P. | 3 |
| Marathon Petroleum Company LLC | 1, 3 |
| Morgan Stanley Capital Group Inc. | 3 |
| Nalco Company | 3 |
| Suncor Energy Marketing, Inc. | 1 |
| Targa Liquids Marketing & Trade and Targa Midstream Servs., L.P. | 3 |
| Wachovia Bank, N.A. | 1, 2, 3 |
| Wilmington Trust Company, as trustee for '15s | 1, 2, 4 |