**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re:                                                       :
                                                             :    **Chapter 11**
**LYONDELL CHEMICAL COMPANY, et al.,**       :    **Case No. 09-10023 (REG)**
                                                             :    **Jointly Administered**
                    Debtors.                         :
-------------------------------------------------------------x
                                                             :
**LYONDELL CHEMICAL COMPANY, et al.,**       :
                                                             :
                    Plaintiffs,                      :
                                                             :
        v.                                                   :    **Adv. Proc. No. 09-01038 (REG)**
                                                             :
**CENTERPOINT ENERGY GAS SERVICES**          :
**INC., et al.,**                                    :
                                                             :
                    Defendants.                      :
-------------------------------------------------------------x

**PRELIMINARY INJUNCTION PURSUANT TO 11 U.S.C. § 105, RULE 65
OF THE FEDERAL RULES OF CIVIL PROCEDURE, AND RULES 7001(7)
AND 7065 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Upon the motion dated February 6, 2009 [Adv. Doc. No. 3] and the supplemental motion dated February 9, 2009 [Adv. Doc. No. 8] (together, the "**Motions**") of Lyondell Chemical Company and its affiliated debtors, as debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), seeking

(i) a preliminary injunction and a temporary restraining order pursuant to section 105 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), and rule 65 of the Federal Rules of Civil Procedure, made applicable by rule 7065 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Bankruptcy Rule 7001(7), and/or

-1-

(ii) extension of the automatic stay pursuant to section 362 of the Bankruptcy Code,

to enjoin

(a) all creditors of the Debtors, and all persons or entities acting in concert with any of them (collectively, the "**Guaranty Claimants**") from attempting to exercise remedies against LyondellBasell Industries AF S.C.A. ("**LBIAF**") and the Debtors' other non-debtor affiliates (with LBIAF, collectively, the "**Non-Debtor Affiliates**") with respect to claims arising from any Non-Debtor Affiliate's guaranty made prior to the filing of the Debtors' chapter 11 cases of prepetition payment obligations of any of the Debtors (any such claim, a "**Guaranty Claim**") and

(b) the indenture trustee with respect to and the holders of record and beneficial holders of the €500 million and $615 million 8-3/8% Senior Notes due 2015 issued by LBIAF (the "**2015 Notes**"), and all other persons or entities acting in concert with any of them (collectively, the "**2015 Noteholders**"), from exercising any remedies against the Non-Debtor Affiliates in connection with the 2015 Notes; all as described more fully in the Motions;

And the Court having jurisdiction to consider the Motions and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motions and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409;

And due and proper notice of the Motions having been provided by the various methods used by the Debtors, and no other notice being necessary;

And the relief requested being in the best interest of the Debtors and their estates and creditors; and the Court having considered and reviewed:

(i) the Debtors' complaint for injunctive relief [Adv. Doc. No. 1] (the "**Complaint**"),

(ii) the Motions,

(iii) the memorandum of law in support of the Motions [Adv. Doc. No. 4] (the "**Memorandum**"),

(iv) the declaration and supplemental declarations of Alan S. Bigman in support of the Motions [Adv. Doc. Nos. 5, 43 and 64], parts of which are filed under seal,

(v) the affidavit of service reflecting the service provided of the Motions and the Complaint,

(vi) the objections and supplemental objections filed with respect to the Motions (the "**Objections**"),

(vii) the Debtors' omnibus responses to the Objections [Adv. Doc. Nos. 5 and 68], and

(viii) the evidence and arguments presented at the hearings held before the Court on February 6, 2009, February 13, 2009 and February 23, 2009 (the "**Hearings**");

And upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, and based on the Findings of Fact and Conclusions of Law set forth in the Court's decision of this date, which is hereby incorporated by reference, and the Supplemental Findings of Fact set forth below,

THE COURT FINDS AND CONCLUDES AS FOLLOWS:

1. Certain holders of Guaranty Claims who have made demands on LBIAF have retained counsel in Luxembourg or the Netherlands to pursue remedies against LBIAF in those jurisdictions. In advance of commencing a direct action against LBIAF, one such creditor already has applied for and received an *ex parte* order of a Netherlands court to restrain the Netherlands subsidiaries of LBIAF from paying obligations owed to LBIAF. Further steps could include commencement of an involuntary insolvency proceeding against LBIAF.

2. Although the holders of the 2015 Notes appear to be subject to a standstill agreement preventing them for a period of 179 days from exercising remedies against their collateral security, or from pursuing any of the guarantors of their obligations, they may still be able to accelerate the obligations under the 2015 Notes and then commence an involuntary insolvency proceeding against LBIAF.

3. Any such insolvency proceeding could enable the 2015 Noteholders, the Guaranty Claimants, or a foreign liquidator or administrator to obtain control of the Debtors' corporate parent and effect changes throughout the organizational structure of the Debtors, thereby disrupting the reorganization of the Debtors in the United States in the chapter 11 cases before the Court.

4. Any such insolvency proceeding also would cause a default under the Debtors' debtor-in-possession financing facility (the "**DIP Facility**"), which in turn would trigger defaults under the Debtors' forbearance agreements with their prepetition lenders and cross-defaults in numerous other contracts and agreements. The ensuing loss of liquidity to the Debtors and Non-Debtor Affiliates, exercise of rights against collateral of Non-Debtor Affiliates, and general disarray in the Debtors' business operations would disrupt the Debtors' administration of these

4

chapter 11 cases, distract the Debtors' management, and impair the Debtors' ability to reorganize.

5. An involuntary foreign insolvency proceeding of LBIAF would result in substantial risk of damage to the business, property and world-wide operations of the Debtors, and a substantial distraction of the attention of the Debtors' senior management (which substantially overlaps with LBIAF's senior management) away from the Debtors' reorganization efforts at a critical juncture in these cases. Thus the acceleration of the 2015 Notes could have a deleterious effect on the Debtors' reorganization efforts and on the value available to pay creditors, including the Guaranty Claimants and the 2015 Noteholders.

6. LBIAF has only limited liquid assets, which are insufficient either to fund a defense against or to satisfy either the Guaranty Claims or accelerated obligations under the 2015 Notes. Defense costs and, if appropriate, claim payments would need to be funded by the Debtors or other non-debtor subsidiaries who have guaranteed the Debtors' obligations.

7. The Guaranty Claimants and the 2015 Noteholders will not be significantly harmed by the issuance of a preliminary injunction. They each retain the right to file claims in these cases. The delay imposed by a preliminary injunction will not prejudice holders of 2015 Notes or Guaranty Claims to any degree comparable to the prejudice that all of the other creditors and parties in interest in these chapter 11 cases would suffer if the challenged actions were not enjoined.

8. The ability of holders of the Guaranty Claims and 2015 Notes (each of which is also a creditor of the Debtors to the extent it has valid claims against LBIAF) to recover on their claims will depend in material part, if not entirely, on the value of the underlying enterprise, much of which is before the Court in these chapter 11 cases. The issuance of a preliminary injunction

will maximize the value of the Debtors' estates by maintaining the enterprise value of not only the Debtors but of the entire integrated, global enterprise, and thus is in the best interests of the Debtors, their estates and their creditors, including the creditors of LBIAF.

9.  For the above reasons, denial of the requested injunctive relief would cause immediate and irreparable injury to the Debtors' estates, and the balance of the equities tips decidedly in favor of the movants-Debtors.

10.  Due and adequate notice to the extent practicable has been given to the Guaranty Claimants and the 2015 Noteholders.

The legal and factual bases set forth in the Complaint, the Motions, the Memorandum, the supporting declarations, the responses to the Objections, and at the Hearings establish just cause for the relief granted in this Order.

**NOW, THEREFORE**, based on the foregoing and for other good and sufficient cause, it is hereby

**ORDERED** that the Motion is granted to the extent, and on the conditions, set forth in this Order; and it is further

**ORDERED** that all objections to the relief sought in the Motions are overruled on their merits; and it is further

**ORDERED** that, pursuant to sections 105(a) and 362(a) of the Bankruptcy Code, effective immediately and subject to the terms hereof, and **for a period of 60 days from the date of entry of this Order**,

> (i) the 2015 Noteholders and their agents, attorneys and all persons acting in concert or participation with them, directly and indirectly, and

6

(ii) any prepetition creditor of the Debtors holding a guaranty executed by the Non-Debtor Affiliates, including the Guaranty Claimants, and their agents, attorneys and all persons acting in concert or participation with them, directly and indirectly,

are hereby stayed, restrained and enjoined, in each case with respect to the 2015 Notes or any Guaranty Claim, from

(a) commencing or continuing any involuntary insolvency proceeding or similar proceeding, in any jurisdiction whatsoever, against any Non-Debtor Affiliate;

(b) taking any act or action to accelerate the maturity of or otherwise enforce any rights or exercise any remedy against any Non-Debtor Affiliate;

(c) taking any act or action to obtain possession of or exercise control over property, or the proceeds of property, of any Non-Debtor Affiliate;

(d) taking any act or action to create, perfect or enforce any lien or attachment against any Non-Debtor Affiliate or its property, or the proceeds of such property;

(e) commencing or continuing any action or legal proceeding (including, without limitation, any judicial, quasi-judicial, administrative or regulatory action, proceeding or process whatsoever), including by way of counterclaim, against any Non-Debtor Affiliate, or any of its property, or the proceeds of such property; and

(f) enforcing any judicial, quasi-judicial, administrative or regulatory judgment, assessment or order against any Non-Debtor Affiliate, and commencing or continuing any act or action or other legal proceeding (including,

7

without limitation, any judicial, quasi-judicial, administrative or regulatory action, proceeding or process whatsoever) except by assertion of counterclaim or setoff against claims affirmatively asserted by any such Non-Debtor Affiliate, and except to the extent expressly permitted under this Order;

and it is further

**ORDERED** that LBIAF, and its agents, attorneys, all persons acting in concert or participation with it, directly or indirectly, are enjoined from:

(a) transferring or encumbering the stock of Basell Funding S.a.r.l. ("**Basell Funding**");

(b) transferring, encumbering, releasing, settling or compromising any of LBIAF's receivables, including, without limitation, intercompany receivables; and

(c) making any payments outside of the ordinary course of business;

and it is further

**ORDERED** that notwithstanding anything to the contrary in this Order, defendant ConocoPhillips Co. ("**COP**") is permitted to take such actions to perfect the attachment that would result from the proceeding it commenced against LBIAF in the District Court of Rotterdam, The Netherlands (including but not limited to the order of attachment issued by the District Court of Rotterdam on February 6, 2009) as would be permitted if it were a creditor in a case under the United States Bankruptcy Code and section 546(b) thereof were applicable;

*provided* that COP may not take any steps to enforce any lien or attachment that would thereby result, or intercept or disrupt the transmission of any cash or other assets to enforce its rights; and

8

*provided further* that in the event of any LBIAF insolvency proceeding under the laws of the United States or any other country, nothing in this Order will relieve COP of any exposure it might have in connection with the avoidance of preferential transfers.

For the avoidance of doubt, COP, and its agents, attorneys and all persons acting in concert or participation with it, directly and indirectly, are enjoined from any steps to restrict the payment of any funds (or the transmission of any assets) to or from LBIAF—including, without limitation, enforcing any restraint on payments from Non-Debtor Affiliates to LBIAF; and it is further

**ORDERED** that pursuant to Bankruptcy Rule 7065, the Debtors are relieved from posting any security pursuant to rule 65(c) of the Federal Rules of Civil Procedure; and it is further

**ORDERED** that notwithstanding anything to contrary in this Order, the relief set forth in this Order shall not stay, restrain, enjoin or otherwise hinder the pursuit of remedies with respect to Guaranty Claims with respect to postpetition obligations of the Debtors; and it is further

**ORDERED** that the relief set forth in this Order shall not stay, restrain, enjoin or otherwise hinder the Term DIP Agent or the Roll-Up DIP Lenders (as such terms are defined in the *Interim Order (i) Authorizing Debtors (A) to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e), (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (C) to Purchase Certain Assets Pursuant to 11 U.S.C. § 363, (ii) Granting Adequate Protection to Pre-Petition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364 and (iii) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)* entered by the Court on January 8, 2009 [Main Case Doc. No. 79] (as such

9

order may be modified, amended or supplemented by a final order, the "**DIP Order**")), subject to the terms of the DIP Order, from enforcing any rights, exercising any remedies, taking any actions, enforcing any assessment or order or lien, or commencing or continuing any legal proceeding under the DIP Documents or the applicable Pre-Petition Loan Documents with respect to the Roll-Up DIP Loans (as such terms are defined in the DIP Order), solely to the extent that any such action is not prohibited under the DIP Order and is not prohibited by any other agreement to which such lenders are party; and it is further

**ORDERED** that the relief set forth in this Order shall not stay, restrain, enjoin or otherwise hinder the lenders under (i) that certain Bridge Loan Agreement dated as of December 20, 2007, among LyondellBasell Finance Company, LBIAF, the Guarantors party thereto from time to time, the Lenders party thereto from time to time, Merrill Lynch Capital Corporation, as administrative agent, Citibank, N.A., as collateral agent, and Merrill Lynch, Pierce, Fenner & Smith Incorporated, Goldman Sachs Credit Partners L.P., Citigroup Global Markets Inc., ABN AMRO Incorporated and UBS Securities LLC, as joint lead arrangers and bookrunners, and Merrill Lynch, Pierce, Fenner & Smith Incorporated, as transaction coordinator and the other parties thereto (as amended and restated, the "**Bridge Loan Facility**"); (ii) that certain Credit Agreement relating to the inventory-based credit facility, that certain Receivables Purchase Agreement relating to the domestic receivables securitization facility, dated December 20, 2007, and that certain Receivables Purchase Agreement dated July 29, 2005, along with related definitive documentation representing the existing asset-based facilities of the Borrowers in the U.S. (as amended, supplemented or otherwise modified, the "**Prepetition ABL Facilities**"), or (iii) that certain Credit Agreement, dated as of December 20, 2007, among Lyondell AF, Lyondell, LyondellBasell Industries Holdings B.V., Basell Finance Company, B.V. and Basell

Germany Holdings GmbH, as borrowers, the subsidiary guarantors party thereto, Citibank, N.A., as primary administrative agent and as collateral agent, the other agents and other entities party thereto and the financial institutions and other persons or entities party thereto as lenders (in each case as amended, supplemented or otherwise modified, the "**Senior Credit Facility**" and, together with the Existing ABL Facilities and the Bridge Loan Facility, the "**Prepetition Secured Credit Facilities**") from enforcing any rights, exercising any remedies, taking any actions, enforcing any assessment or order or lien, or commencing or continuing any legal proceeding solely with respect to the Prepetition Secured Credit Facilities and solely to the extent that any such action is permitted under applicable law and the Prepetition Secured Credit Facilities and is not prohibited by any other agreement to which such lenders are party; and it is further

**ORDERED** that nothing contained in this Order shall prohibit any party in interest from seeking relief from the automatic stay of section 362(a) of the Bankruptcy Code or the terms of this Order by filing an appropriate motion with the Court, after appropriate notice to counsel for the Debtors and the creditors' committee appointed in these cases; and it is further

**ORDERED** that if Access Industries and its affiliates (collectively, "**Access Group**") fail to file with this Court, within 5 calendar days, tolling agreements with respect to any and all causes of action that might exist, on behalf of either LBIAF or its creditors, in connection with avoidance actions either might bring against Access Group arising from transfers by LBIAF to any member of Access Group, any defendant in this adversary proceeding may move to vacate this Order on three business days' notice; and it is further

**ORDERED** that nothing in this Order will prevent a *consensual* workout or restructuring of LBIAF debt, nor will it prevent the negotiation or filing of a *voluntary* insolvency proceeding

11

or a *voluntary* plan of reorganization or arrangement for LBIAF or any Non-Debtor Affiliate, in this or any other court, or outside of any court; and it is further

**ORDERED** that a copy of this Order shall be served by overnight mail, postage prepaid, within three (3) business days of entry of this Order, upon (i) all known parties who are directly affected by this Order, or their counsel, including counsel of record for the Guaranty Claimants and the indenture trustee for the 2015 Notes, (ii) the creditors' committee appointed in these cases, (iii) the Office of the United States Trustee, and (iv) all other persons on the Debtors' master service list; and it is further

**ORDERED** that service of the Motions as provided in this Order, including service upon counsel of record for the Guaranty Claimants and the indenture trustee for the 2015 Notes, as applicable, shall be deemed good and sufficient notice of such Motions, and service of this Order in accordance herewith shall be deemed good and sufficient service and adequate notice for all purposes; and it is further

**ORDERED** that this Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order.

Dated: New York, New York        *s/Robert E. Gerber*
       February **26**, 2009          United States Bankruptcy Judge